IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIANNA C., <br><br>             Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br>             Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING ALJ DECISION** <br><br> Case No. 2:24-cv-00954-CMR <br><br> Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 5). 28 U.S.C. § 636(c). Plaintiff Dianna C. (Plaintiff or Claimant), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner or Defendant) denying her claim for disability insurance benefits (DIB) and supplemental social security income (SSI) under Title XVI of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 9), and the parties' briefs: Plaintiff's Motion for Review of Agency Action (Pl. Br.) (ECF 11); Defendant's Response (Def. Br.) (ECF 18); and Plaintiff's Reply (Pl. Rep.) (ECF 19), the court concludes that the Commissioner's decision is not supported by substantial evidence and free from reversible error. For the reasons discussed below, the court hereby GRANTS Plaintiff's Motion for Review of Agency Action (ECF 11) and REVERSES and REMANDS the decision of the Commissioner.

## I.    BACKGROUND

Plaintiff was 60 years old on her disability onset date of January 16, 2021 (Tr. 236, 280). Plaintiff filed an application for DIB and (SSI in November 2021, alleging disability due to lumbar

spinal stenosis and chronic kidney disease (Tr. 96, 236, 243).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. at 21–37). *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated January 12, 2024, the ALJ determined at step two that Plaintiff had severe impairments of stage 2 chronic kidney disease, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, acute diverticulosis, and diverticulosis status post elective sigmoid colectomy (Tr. 24). The ALJ further found that Plaintiff had the following non-severe impairments because they did not significantly limit her ability to perform basis work activities: COVID-19, atherosclerotic disease, hemorrhoids, kidney stones, incisional hernia, and obesity (Tr. 24–25). The ALJ also found that the evidence did not support a medically determinable hand impairment or bilateral hip impairment (Tr. 25–26).

At step three, the ALJ considered Plaintiff's physical impairments under the following listings and found that the criteria for each were not met: lumbar spine impairment under Listing 1.15, severe degenerative joint disease of the right shoulder under Listing 1.18, kidney disease under Listing 6.05, and diverticulosis under Listing 5.00 (Tr. 26). The ALJ next determined Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with the following non-exertional limitations:

> [Plaintiff can] occasionally climb ramps and stairs; she can never climb ladders, ropes, and scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can frequently reach in all directions bilaterally; and she can never be exposed to hazards such as unrestricted heights and dangerous moving machinery[.]

(*id*. at 27).

At step four, the ALJ found that Plaintiff could perform past relevant work as a Reservation Agent (Dictionary of Occupational Titles (DOT) 238.367-018)) (Tr. 34). In addition

to past relevant work and consistent with the vocational expert's testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including: Data Entry Clerk (DOT 203.582-054); Appointment Clerk (DOT 237.367-010); and Service Dispatcher (DOT 239.367-014), all semi-skilled work (Tr. 35–36). The ALJ therefore concluded that Plaintiff was not disabled and denied DIB and SSI benefits (*id*. at 37). The ALJ's decision became the Commissioner's final decision when the agency's Appeals Council denied her request for review. 20 C.F.R. § 404.981. The court has jurisdiction under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 103, 108. Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The decision is sufficient if it permits the court to follow the ALJ's reasoning. *See Garland v. Ming Dai*, 593 U.S. 357, 358 (2021) ("Reviewing courts, bound by traditional administrative law principles, must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974))). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v.*

3

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

However, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)). Lastly, when reviewing under the substantial evidence standard, "'[t]he ALJ's decision should be evaluated based solely on the reasons articulated in the decision.'" *See Ann S. v. Kijakazi*, No. 2:20-cv-00841-JCB, 2022 WL 204596, at *3 (D. Utah Jan. 24, 2022) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004)).

### III.    DISCUSSION

On appeal, Plaintiff asserts the following three points of error with the ALJ's evaluation: (1) the ALJ failed to discuss Plaintiff's inability to sit for long periods of time (Pl. Br. at 10–13); (2) the ALJ did not adequately consider the medical opinion of Talon Kohler, PA-C (PA Kohler) (*id*. at 10, 13–18), and (3) the ALJ erred by failing to consider whether Plaintiff's hip bursitis was either a severe or non-severe impairment (*id*. at 16–18). The court has considered each of Plaintiff's points of error, and for the reasons stated below, the court finds that the ALJ committed reversible error by not adequately explaining the absence of any sitting limitations. As the court finds remand warranted based on this issue, the court does not address the additional arguments raised by Plaintiff.

### A.  The ALJ failed to comply with Social Security Ruling (SSR) 96-8p.

Plaintiff argues that the ALJ's RFC assessment did not comply with SSR 96-8p (Pl. Br. at 11–13). Specifically, Plaintiff asserts that the ALJ failed to conduct a function-by-function analysis and did not explain how the evidence supports each limitation (*id*. at 11). Plaintiff also contends

that the ALJ did not resolve conflicts in the record regarding her limitations (*id*. at 12–13). According to Plaintiff, this deficiency is most apparent in the ALJ's treatment of Plaintiff's degenerative disc disease, as the decision does not explain how that impairment aligns with the requirements of sedentary work, which involves frequent or sustained sitting (*id*.).

Defendant argues the ALJ adequately considered Plaintiff's sitting limitations but found her symptoms inconsistent with the medical and other evidence (Def. Br. at 7–9). Accordingly, Defendant asserts no error with the ALJ's RFC analysis that sedentary work was appropriate because the evidence did not justify additional limitations, such as alternating between sitting and standing, being off-task, or chronic absenteeism (*id*. at 8–9 (citing Tr. 28, 29–31, 33–34)).

   1. *Standard for Determining RFC*

A claimant must prove that impairments prevent performing past work. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The claimant bears the burden of establishing a prima facie case of disability at steps one through four." (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005))). When the ALJ finds a claimant not disabled at step four, "SSR 96-8p requires specific and detailed predicate findings concerning the claimant's RFC," the demands of past jobs, and how those demands align with the claimant's exertional and nonexertional limitations." *Brown v. Commr. of Soc. Sec. Admin*., 245 F. Supp. 2d 1175, 1186 (D. Kan. 2003) (citing *Winters v. Barnhart,* No. 00–2419–DJW, 2002 WL 1286134, at *14 (D. Kan. June 5, 2002)). SSR 96-8p further requires that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can

perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. A failure to first make a function-by-function assessment of the claimant's limitations or restrictions could result in the adjudicator overlooking some of the claimant's limitations or restrictions.

SSR 96-8p, 1996 WL 374184, at *7.

In addition, the RFC assessment must address both the claimant's exertional and nonexertional capacities. *Id*. at *5. Exertional capacity concerns an individual's limitations in performing the seven strength demands of work, including sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*. SSR 96-8p further emphasizes that, even where functions are ultimately combined in the RFC, "[e]*ach function must be considered separately* (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours')," as evaluating the functions together may not yield the same result as analyzing each independently. *Id*. (emphasis added). This requirement is especially important when, as in this case, the main dispute involves a specific function: Plaintiff's ability to sit for extended periods. Failing to evaluate that function separately risks missing limitations that could impact Plaintiff's ability to perform sedentary work.

In short, SSR 96-8p requires that an ALJ assess a claimant's RFC on a function-by-function basis, explain how the evidence supports each limitation, and provide a clear rationale resolving any conflicting evidence.

### 2. The ALJ's RFC Determination

Here, the ALJ determined that Plaintiff's degenerative disc disease (DDD) constitutes a severe impairment (Tr. 24). The ALJ's decision reflects that Plaintiff's hearing testimony, the objective medical evidence, and other evidence in the record indicate that Plaintiff has reported issues with sitting (Tr. 27–31). Despite Plaintiff's severe DDD and some evidence indicating a limitation in this area, the ALJ concluded that Plaintiff retained the RFC to "perform sedentary

6

work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)" (Tr. 27). Sedentary work, by definition, primarily involves sitting, with only occasional standing or walking. 20 C.F.R. § 404.1567(a). "Occasionally" is clarified by SSR 83-10:

> Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and *sitting should generally total approximately 6 hours of an 8-hour workday*. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251 at *5 (emphasis added).

While the ALJ may conclude that severe DDD does not preclude sedentary work, the decision to dismiss evidence of sitting limitations requires adequate explanation. Because evidence suggests Plaintiff cannot sit for six hours of an eight-hour workday, and the ALJ's opinion does not clearly explain how this was considered, SSR 96-8p mandates a separate evaluation and a clear resolution of conflicting evidence. The court finds the ALJ failed to do so.

### 3.  The ALJ's Evaluation of Plaintiff's Sitting Limitations

As part of his evaluation of the objective medical evidence, the ALJ considered the opinion of PA Kohler who completed a "Residual Functional Capacity Questionnaire" (RFC Questionnaire) based on his ongoing treatment of Plaintiff (Tr. 33 (citing Tr. 713; 734)). The ALJ noted that PA Kohler stated Plaintiff could sit for only 15 minutes at a time and no more than four hours total in an eight-hour workday (*id.*). The ALJ also considered Mr. Kohler's opinion that Plaintiff would require a job that permits shifting positions at will between sitting, standing, and walking (*id.*). The ALJ found PA Kohler's opinion unpersuasive and concluded that some limitations lacked objective support (*id.*). Notwithstanding, there are many reasons why the ALJ's discussion does not comply with SSR 96-8p.

First, the analysis does not clearly show whether or how the ALJ evaluated Plaintiff's sitting limitations. The ALJ did not directly address PA Kohler's findings regarding Plaintiff's sitting ability; instead, he only articulated that PA Kohler's opinion regarding Plaintiff's need for "shifting positions" was not consistent with the objective medical evidence. (*Id.*). If "shifting positions" was meant to address sitting, this is unclear. Even if it includes sitting, standing, and walking, such a general finding fails to meet the requirement to consider each function separately. SSR 96-8p, 1996 WL 374184, at *5.

The absence of a function-by-function analysis is also clear in the ALJ's concluding paragraph of his RFC analysis, where he stated the following: "[T]he objective medical evidence does not support that the claimant would be off task when performing sedentary work, or that she would need to *alternate between sitting and standing*" (Tr. 34 (emphasis added)). This statement does not specifically address Plaintiff's ability to sit alone but appears to conflate sitting with other functions. Thus, it is unclear whether the ALJ evaluated and rejected Plaintiff's sitting limitations or failed to address them.

Second, the analysis fails to explain how the cited evidence undermines PA Kohler's findings on Plaintiff's sitting ability. The ALJ concluded that the sitting limitations included within the RFC Questionnaire were not supported because "they are not supported by PA Kohler's treatment notes (Exhibit B9F/14; B9F/35–36)." (Tr. 33 (citing Tr. 730, 751–52). The ALJ cited no other evidence in this discussion other than PA Kohler's treatment notes at Exhibit B9F pg. 14 and B9F pgs. 35–36. Reviewing these records, the court cannot discern how they support rejecting PA Kohler's opinions regarding sitting limitations.

PA Kohler's treatment notes in Exhibit B9F pg. 14 (Tr. 730) appear to contain no findings that discredit his opinions on Plaintiff's sitting limitations. The only note that is somewhat relevant

8

is PA Kohler's opinion that Plaintiff's gait was normal and that she did not require the use of an assistive device. Without further explanation, the court cannot discern the ALJ's reasoning for indicating that these treatment notes undermine PA Kohler's opinions on sitting limitations. The court reaches the same conclusion with the other treatment notes in Exhibit B9F at pg. 35–36 (Tr. 751–52). While these notes indicate that Plaintiff denied having "trouble walking" and had 5/5 neurological-motor strength in many muscle groups, without further explanation, the court cannot discern how these findings undermine Plaintiff's sitting limitations. While they do relate to walking or standing limitations, the court cannot reasonably determine how these notes apply to sitting. The lack of a logical connection between the evidence and the rejection of PA Kohler's sitting limitations prevents the court from following the ALJ's reasoning.

Finally, the ALJ stated PA. Kohler's opinion conflicted with objective medical evidence but did not specify which evidence supports this (Tr. 33). While the ALJ need not discuss every piece of evidence considered, the court must be able to follow the reasoning. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence."). Here, even under deferential review, the court cannot identify objective evidence cited within the decision addressing PA Kohler's findings on Plaintiff's sitting ability. In a previous discussion, the ALJ discussed Plaintiff's treatment, including lumbar injections and symptom relief, and noted normal gait and preserved lower extremity strength (Tr. 29–31). However, these findings relate to gait and strength, affecting standing and walking, but there is no discussion regarding how this evidence relates to prolonged sitting. The court cannot determine how the discussion of this evidence impacts Plaintiff's ability to sit or undermines Mr. Kohler's opinion on sitting limitations.

Due to these deficiencies, the court cannot adequately assess whether substantial evidence supports the ALJ's RFC determination. The ALJ's conclusions regarding Plaintiff's ability to sit are not sufficiently explained and are therefore beyond meaningful judicial review. The court accordingly finds that remand is required.

## IV.   CONCLUSION AND ORDER

For the reasons above, the Commissioner's decision is REVERSED, and this matter is REMANDED for further administrative proceedings consistent with this Memorandum Decision and Order. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 27 March 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah